UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CIV-80134-HURLEY

FANE LOZMAN,

   Plaintiff,

vs.

CITY OF RIVIERA BEACH,

   Defendant.

_____/

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT & DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Fane Lozman ("Lozman") filed a Second Amended Complaint against the City of Riviera Beach ("the City") pursuant to 42 U.S.C. § 1983, alleging that the City, through the actions of its city council members, retaliated against him for criticizing a municipal redevelopment project and opposing what he perceived as improper conduct of various council members, in violation of his First, Fourth and Fourteenth Amendment rights under the United States Constitution.  He also asserts supplemental state law claims against the City for false arrest, battery and conversion.

The case is now before the court on the parties' cross-motions for summary judgment [DE Nos. 383, 408]. For reasons discussed below, the court will grant in part and deny in part the City's motion for summary judgment, and will deny Mr. Lozman's motion for partial summary judgment.

1

## I. Factual Background[1]

In March, 2006, Mr. Lozman moved to Riviera Beach and leased a slip at the city's marina for his "floating home," a two-level, house-like plywood structure with empty bilge space underneath the main floor to keep it afloat. Shortly after taking up residence, Mr. Lozman learned of the City's interest in a $2.4 billion redevelopment project for the marina, a plan contemplating the seizure of thousands of homes through the power of eminent domain and the transfer of property to a private developer.

Lozman was publicly critical of the City's redevelopment plan, as well as the corruption that he perceived was prevalent throughout the City's government, and routinely voiced those criticisms at public meetings of the Riviera Beach City Council and the Riviera Beach Community Redevelopment Agency (CRA) between the years 2006 – 2013.

On May 10, 2006, Riviera Beach police officers, acting at the direction of the City Council Chairperson, forcibly removed Lozman from a regularly scheduled meeting of the city council. Later that evening, the city council denied him access to a "special meeting" of the council. A few weeks later, on June 7, 2006, Lozman filed suit in state court against the City and various city council members alleging a violation of Florida's Government-in-the-Sunshine Act based on its closure of this meeting.

On June 28, 2006, the city council held a scheduled closed-door executive session. A

---

[1] The Background Facts are either undisputed, or read in the light most  favorable to the plaintiff, as the nonmoving party, as they relate to the  defendant's motion  for summary judgment on the constitutional and supplemental state law claims, even though the  facts accepted at the  summary judgment stage of the proceeding may not be the actual facts of the case.  *Davis v Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Conversely, in determining the plaintiff's cross-motion for partial summary judgment on the conversion claim, the court views the facts relating to that claim in the  light most favorable to the defendant, in its evaluation of the plaintiff's cross motion for summary judgment.

transcript of that proceeding, which has since been made a public record, reveals at least two members of the city council discussing the need to find out who was behind Lozman's Sunshine Act suit, and "to use every reasonable tool that we have to find out who they are, what we are up against, so that we can map our strategy out." [DE 383-10, p. 36].  Responding to these comments, council member Elizabeth Wade said:

> I think it would help to intimidate the same way as FDLE is coming to my house. I am wondering if my lines are tapped or whatever.  I think they should be questioned by some of our people on a legitimate pay scale basis so that they can feel the same kind of unwarranted heat that we are feeling, and I am going to caution that the city has been there before... It is the climate ....We can go in there and be as right as right can be, but if that Judge is already preconcluded [sic], you got the governor's hand in this, or supposedly in this, because all we have got is hearsay that his hand is in it.  You understand what I am saying?  You got FDLE knocking at my door.

[DE 383-10, pp. 37-38]. The Council Chairperson, Ann Isles, later wrapped up the discussion with the comment, "I would like to offer up a consensus that we spend whatever. If you need a private investigator, whatever you need.  If you need somebody to shadow every name that's on this document, I ask for a consensus that we spend those dollars and get it done, so we send one message. This is our house, and we are going to stay, and there ain't none of them going to run us away." [DE 383-10, p. 43]. When Ms. Iles then asked "Do we have a consensus of what Ms. Wade is saying," council member James Jackson responded, "I think what Ms. Wade says is right.  We have to beat this thing, and whatever it takes, I think we should do it."  City Attorney Pamela Ryan responded "Okay," as did council member Norma Duncombe.  [DE 383-10, pp. 44].

As expressed at the outset of this closed door executive discussion, multiple council members shared a concern about who was funding Lozman's Sunshine Act suit, and whether there was connection between Lozman and the offices of then Governor Bush and Attorney General Crist,

governmental bodies which had also been critical of the city's redevelopment project and which the council suspected may have cooperated with Lozman in his pursuit of the Sunshine Act lawsuit.

Although there is no record evidence that the City actually hired a private investigator to investigate or follow Lozman, the record does show that shortly after the conclusion of this closed-door meeting, Lozman became the target of a string of legal pressures applied by the city council or its police department, summarized here as follows:

(a) On September 11, 2006, the City filed an eviction action in state court seeking to evict Lozman's floating home from the marina. Lozman successfully asserted a First Amendment retaliation defense to the eviction action, and the City lost its bid to evict the structure from its marina.

(b) On November 15, 2006, then Riviera Beach City Council Chairperson Elizabeth Wade directed city police officers to forcibly remove Lozman from the podium during the public comment, "non-agenda" section of a city council meeting, within less than a minute after Lozman began speaking about the U.S. Attorney's Office current efforts to crack down on public corruption in Palm Beach County and the recent arrest of Palm Beach County Commissioner Tony Massilloti. Responding to the Chairperson's direction, Officer Francisco Aguirre handcuffed Lozman during the middle of his speech, escorted him from the meeting and transported him to the City of Riviera Beach police headquarters, where Lozman was charged with disorderly conduct and trespass after warning. Sometime later, the charging document was altered, with a "white-out" of the trespass charge, and replacement with the words "resisting w/out violence, to wit obstruction." Ultimately, on January 17, 2007, the Palm Beach County State Attorney's office *nolle prossed* both charges.

(c) Over the course of the next several years, City of Riviera Beach police officers stopped

Lozman on at least 15 different occasions, threatening to arrest him for walking his 10-pound dachshund on marina property.

(d) Over the course of the next several years,  Lozman was repeatedly escorted from city council or CRA meetings, the City Hall building or the City Council Chambers by Riviera Beach police officers acting at various times under the direction of  city council members  Liz Wade, Ann Isles, Cedrick Thomas, Dawn Pardo and Gloria Shuttlesworth.  On those occasions when he was not physically removed, council members "censured" or silenced Lozman by interrupting his remarks or threatening police intervention.

(e) On July 9, 2008, Lozman's former attorney, Robert Bowling, sent a formal written "notice of claim" to the City, pursuant to § 768.28(6), Fla. Stat., asserting  First Amendment, Fourth Amendment and  Fourteenth Amendment violations, as well as a state law claim of false arrest, based on Lozman's November 15, 2006 arrest, and the City's forcible  removal of Lozman from the May 2006 regular meeting of the city council, as well as various other unspecified retaliatory acts of censure and antagonism.

(f) On April 1, 2009, the City cut off Lozman's electricity at the marina for a period of nearly three weeks, finally restoring it on April 20th, three days after being ordered to do so by a state court judge.

(g) On April 20, 2009, the City initiated an *in rem* federal admiralty action against Lozman's floating residence in the United States District Court for the Southern District of Florida.  The City requested and obtained an  *ex parte* arrest warrant authorizing the seizure of  Lozman's floating home,  without disclosing that Lozman had prevailed in a prior state eviction proceeding initiated by the City, and that just three days earlier a state court judge issued an order directing the City to

restore electricity to the floating home.

When Lozman and a local television cameraman witnessed the arrest of the structure and attempted to film the procedure, from the vantage point of a nearby public parking lot, a Riviera Beach Police Commander approached them and, in a loud voice, threatened to arrest them both if they did not stop the filming.

(h) On October 21, 2009, then City Council Chairperson Dawn Pardo directed two police officers to remove Lozman from a City Council meeting for failing to yield the podium.  Lozman claims that the officers threw him to the floor in the process of forcibly removing him from the meeting, while Pardo, City Attorney Pamela Ryan and other members of the city council laughed and mocked him in his stricken state.

(i) On November 18, 2009, the United States District Court, exercising its admiralty jurisdiction, entered partial summary judgment in favor of the City, and on January 6, 2010, entered final judgment against the *in rem* defendant, i.e., the floating home, which the court ruled was a "vessel," in the amount of $3,039.88, plus custodial fees, and further ordered that the "vessel" be sold at a U.S. Marshal sale to pay the judgment. *City of Riviera Beach v. That certain unnamed gray, two story vessel approximately fifty-seven feet in length, etc., in rem*, Case No. 09-80594-Civ-Dimitrouleas (S.D. Fla. 2010) [DE 159].  On February 9, 2010, the City purchased the floating home at a U.S. Marshal's public auction in Miami, outbidding the public that attended the auction, and subsequently destroyed it at a cost of $6,900.00.

(j) In the interim, Lozman's appeal of the district court's final judgment worked its way to the United States Supreme Court, which ultimately determined, by opinion issued January 15, 2013, that Lozman's floating home was not a vessel for purposes of admiralty law, and that the district court

therefore lacked subject matter jurisdiction over the City's action. *Lozman v. City of Riviera Beach, Florida*, ___ U.S. ___, 133 S. Ct. 735, 184 L. Ed.2d 604 (2013).  On September 25, 2013, on remand from the United States Court of Appeals for the Eleventh Circuit Court, the district court dismissed the action for lack of subject matter jurisdiction.  *City of Riviera Beach v. That certain unnamed gray, two story vessel, etc*., Case No. 09-80594-Civ-Dimitrouleas [DE 210].

## II. Plaintiff's Complaint

Based on the foregoing allegations, Plaintiff's Second Amended Complaint asserts six constitutional claims against the City under 42 U.S.C. § 1983:  (1) a First Amendment retaliation claim based on the City's alleged retaliatory lawsuits, arrests and campaign of harassment; (2) a First Amendment right to petition claim based on the City's alleged interference with  Lozman's right to petition the government for redress of grievances; (3) a Fourth Amendment unlawful seizure claim based on the City's alleged false arrest of Lozman's  person;  (4) a Fourth Amendment unlawful seizure claim based on the City's alleged unlawful false arrest and seizure of Lozman's floating home; (5) a Fourteenth Amendment Substantive Due Process and Procedural Due Process claim based on the City's alleged implementation of  a punitive, retaliatory legal campaign designed to deprive Lozman of his right to petition the government and exercise free speech;  (6) a Fourteenth Amendment Equal Protection claim based on the City's alleged selective and discriminatory enforcement  of city ordinances, regulations and rules against Lozman.  In addition, Lozman's Second Amended Complaint includes three supplemental state law claims for false arrest, battery, and conversion.

In earlier formulations of his complaint, Lozman named as defendants the City of Riviera Beach, the City of Riviera Beach Community Redevelopment Authority (CRA), and numerous

7

individual members of the Riviera Beach City Council. In his now operative Second Amended Complaint, Lozman has dropped all of the previously named individual city council members as well as the CRA as party defendants, leaving only the City of Riviera Beach named as a defendant to this cause.

Because the City of Riviera Beach is a municipal entity, it can be held liable under § 1983 only if the alleged constitutional violations resulted from the execution of the City's own policies. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988). This "official policy" requirement is designed to distinguish acts of the municipality from acts of the employees of the municipality, and to make it clear that municipal liability is limited to action for which the municipality is actually responsible.

To establish the existence of a municipal policy or custom which caused a constitutional violation, the plaintiff in a §1983 suit may alternatively proceed with proof of: (1) an express policy which caused the constitutional deprivation; (2) a widespread practice or custom which, although not authorized by written or express municipal policy, is so permanent and well-settled that it constitutes a policy, or (3) a constitutional deprivation directed or caused by a person vested with final decision or policy-making authority on behalf of the municipality. *Kujawski v. Board of Com'rs of Bartholomew County, Ind.,* 183 F.3d 734 (7th Cir. 1998).

Where, as here, a policy maker is comprised of a public body consisting of multiple board members, a majority of the members of the council constitutes a final policymaker for purposes of creating *Monell* liability. *Campbell v. Rainbow City, Ala.* 434 F.3d 1306 (11th Cir. 2006); *Matthews v. Columbia County*, 294 F.3d 1294 (11th Cir. 2002); *Mason v Village of el Portal*, 240 F.3d 1337,

1339 (11th Cir. 2001).  Accordingly, Lozman may maintain his § 1983 action against the City under a "final policy maker" theory of *Monell* liability only if he shows that the retaliatory actions complained of were directed or authorized by a majority of City Council members who harbored an illegal motivation to punish and deter Lozman from his public advocacy against the City. [2]

### III. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v.  Liberty Lobby, Inc*., 477 U.S. 242, 248, 106. S. Ct., 91 L.Ed.2d 202 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id.*

A party seeking summary judgment bears the initial responsibility for advising the court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986).  The moving party must establish that there is not triable issue of fact as to all the elements of any issue on which the moving party bears the burden of proof at trial.

In contrast, where the nonmoving party bears the burden of proof on a particular issue at trial, the moving party's initial burden under *Celotex* can be met simply by demonstrating that "there is an

---

[2] The City of Riviera Beach is governed by a mayor and a five-member city council, for a total of six persons.  The mayor serves as the *de facto* chairperson, and votes only in case of a tie or filling a council person vacancy. Under the City Charter, the affirmative vote of a majority of the members present at any meeting is required to adopt any ordinance, resolution, order or vote.  Thus, the affirmative participation of at least three of the five council members is required for any city action.

absence of evidence" to support the nonmoving party's case.  *Celotex,* 477 U.S. at 325.  After the nonmoving party meets its initial burden, "the adverse party's response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(c). Thus, summary judgment is appropriate if the nonmoving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Put another way, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a motion for summary judgment looks beyond the pleadings and requires the nonmoving party – by affidavits, depositions, interrogatory answers or admissions on file – to designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324.  The nonmoving party may not restate allegations made in its pleadings or rely upon "self-serving conclusions, unsupported by specific facts in the record."  *Id.*  Rather the nonmoving party must support each essential element of its claims with specific evidence from the record.  *Celotex*, 477 U.S. at 322.

Further, evidence introduced to defeat or support a motion for summary judgment must be sworn, competent and on personal knowledge, and set out facts that would be admissible at trial. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Callahan v. A.E.V., Inc.,* 182 F.3d 237, 252 n. 11 (3d Cir. 1999).

The court must view the evidence presented on the motion in the light most favorable to the opposing party, and make every reasonable inference in favor of that party. *Sims v. MVM, Inc.,* 704 F.3d 1327, 1330 n. 2 (11th Cir. 2013).   The standards governing cross-motions for summary judgment are the same, although the court must construe the motions independently, viewing the

10

evidence presented by each moving party in the light most favorable to the non-movant.  *Shazor v Professional Transit Management, Ltd.,* 744 F.3d 948 (6th Cir. 2014).

## IV. Discussion

### A.  Constitutional Claims

Section 1983 of Title 42 of the United States Code offers private citizens a means of redress for violations of federal law by state officials.  42 U.S.C. §1983.  The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State …. subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

*Id.*  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S. Ct. 1827, 118 L.Ed.2d 504 (1982).  To establish a claim under this section, the plaintiff must show a deprivation of "a right secured by the Constitution and laws" of the United States by a person acting under color of state law.

### 1.  First Amendment Retaliation Claims

An individual has a viable First Amendment claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-284,  97  S. Ct. 568, 50 L.Ed.2d 471 (1977).  A plaintiff who brings a retaliation claim under §1983 predicated on the First Amendment must show: (1) he or she engaged in constitutionally protected activity; (2) the

11

defendant's responsive actions were motivated or substantially caused by the exercise of that right, i.e. there was a causal connection between the protected activity and the retaliatory action, and (3) the defendant's retaliatory actions were sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights, i.e. the defendant's actions effectively chilled the exercise of the plaintiff's First Amendment right. *Curley v. Village of Suffern*, 268 F. 3d 65, 73 (2d Cir. 2001); *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).

To prove causation, a plaintiff must prove that his speech was the "but-for" cause of the allegedly retaliatory action, *Fairley v. Andrews,* 578 F.3d 518 (7th Cir. 2009), which may be accomplished with proof of: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007); *Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004 (7th Cir. 1997) (pattern of criticism and animosity by supervisors following protected activities supported existence of causal link in Title VII retaliation claim). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact [sic] should infer causation.'" *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000).

In this case, the Plaintiff's First Amendment retaliation claim is premised on a series of retaliatory actions – one arrest, multiple threatened arrests, repeated expulsion from public meetings of the city council, an eviction action, an *in rem* action against his floating home, and ultimately the destruction of his floating home -- allegedly taken by the City in response to (1) the 2006 lawsuit brought by Plaintiff against the City under Florida's "Government in the Sunshine Act," charging the improper conduct of official municipal business behind closed doors; (2) the Plaintiff's public

criticism of the City's proposed redevelopment plan, (3) the Plaintiff's public criticism of the integrity of various municipal officials.  The Second Amended Complaint pleads facts, and the summary judgment record contains evidence, showing that Plaintiff regularly attended public meetings of the City of Riviera Beach City Council, and its related arm, the City of Riviera Beach Community Redevelopment Authority (comprised of the same individuals who served on the City Council); that he engaged in expressive political speech during those meetings; that he engaged in protected petition activity by filing his Sunshine Act suit against the City; that he was arrested or threatened with arrest contemporaneously or shortly after engaging in this protected activity, and that he was sued in state and federal court by the City in an attempt to evict his person and floating residence from the City marina shortly after engaging in this protected activity.

The City contends that Lozman's arrests were justified, and therefore cannot form the premise of an unlawful retaliation claim.  If, in fact, a §1983 plaintiff was engaged in the commission of a crime when he was arrested, his First Amendment interests necessarily yield, and inquiry into the government's motive for making the arrest becomes unnecessary. *Curley v. Village of Suffern*, 268 F.3d 65 (2nd Cir. 2001).  However, in this case, the record suggests, at a minimum, a genuine issue of material fact on the question of whether City of Riviera Beach police officers had probable cause to arrest Plaintiff for disorderly conduct or resisting arrest without violence during the November 2006 arrest incident alleged in the complaint. Therefore, the fact of Plaintiff's arrest does not eliminate further inquiry into the causation element of his First Amendment retaliation claim to the extent based on the false arrest of his person.

There is also record evidence of a very close temporal connection between the timing of Plaintiff's expressive speech and the filing of the Sunshine Act suit, and the City's exertion of an

extended string of legal pressures against Lozman – proximity in time which constitutes some circumstantial evidence of improper motive behind the City's actions. That is, the record plainly shows that Lozman was engaged in expressive political speech, as well as the valid exercise of his right to petition the government, at a time just prior to the adverse municipal actions alleged. This is adequate circumstantial evidence of causation to survive summary judgment on Plaintiff's First Amendment retaliation claims. *Jones v. Parmley,* 465 F.3d 46, 56 (2d Cir. 2006).

This leaves the issue of the City's *Monell* liability as the final element of the Plaintiff's § 1983 First Amendment retaliation claim under challenge by the City's current motion for summary judgment. As stated above, under *Monell,* a municipality cannot be held liable solely because it employs a tortfeasor – i.e. it cannot be held liable on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Id.*

The word "policy" implies a course of action consciously chosen from various alternatives. In the *Monell* sense, a policy may be expressly chosen by a municipal body, e.g. by statute, regulation, rule or ordinance; the existence of an official policy may be inferred from municipality inaction or "deliberate indifference" in the face of a widespread custom or usage of constitutional deprivations perpetuated by municipal employees or agents; or, a person vested with final decision-making authority on behalf of the municipality can take action which is said to constitute municipal policy.

With regard to final decision-maker theory, the court finds, first, that the record contains evidence reasonably susceptible to inference that the Council Chairperson in 2006, Elizabeth Wade,

harbored illicit motivation to punish and deter Lozman based on his exercise of free speech and petition of government, and that a majority of the city council members in attendance at that time -- and a majority of members constituting later formulations of the council -- approved and endorsed Wade's retaliatory sentiments when they initiated, endorsed, or directed a series of legal pressures against Lozman – including the attempted eviction from the marina, the arrest and threatened arrests, the seizure and destruction of Lozman's floating residence, the termination of his electricity, and the invasion of his privacy by unauthorized photography of his person inside of his home.  That Lozman became the target of this extended string of legal pressures shortly after he filed his  Sunshine Act suit and shortly after he began criticizing the city's municipal policies is some circumstantial evidence that a majority of members on the city council  harbored the illegal retaliatory motivation expressed by Council Chairperson Wade, at least enough to raise a jury issue on the question of whether a majority of the council acted with unlawful motivation when it authorized and initiated legal proceedings to remove Lozman and his floating home from the City of Riviera Beach marina community. At trial, the Plaintiff will have the burden of demonstrating that each alleged retaliatory action represented an action taken with the support of at least three council persons harboring such illegal motivation; for summary judgment purposes, the court finds sufficient circumstantial evidence on record to raise a jury question on this *Monell* element of claim. *Schlessinger v.  The Chicago Housing Authority*, 2013 WL 5497254 (N. D. Ill. 2013).

Alternatively, the record is also susceptible to a finding of an unconstitutional policy, either express or as applied, in the embodiment of the city council's "Rules of Decorum" invoked as a basis for Lozman's expulsion from various city council meetings.  If the relevant "Rules of Decorum" on their face, or as applied to Lozman, constituted an unreasonable restriction on Lozman's First

Amendment right of free expression in the subject forum, to wit, the public comment, non-agenda portion of open city council meetings, these rules may serve as evidence of an express municipal policy which caused the First Amendment deprivations complained of by Lozman, thereby satisfying the *Monell* element of his First Amendment retaliation claim.

The City questions whether the correct rules have been cited by Plaintiff (i.e. whether he has cited the rules in effect at the time of the alleged constitutional infringements), but does not affirmatively show that the rules in effect during the relevant city council meetings are different in any material respect from the rules referenced by Plaintiff, nor has either party addressed the constitutional permissibility of the substantive content of the rules, facially or as applied, in their respective briefing on the current motions for summary judgment. On this record, the court finds a genuine issue of material fact on the content of the relevant "Rules of Decorum," as well as a mixed fact/law issue on the question of whether these rules evince an unconstitutional express policy of the City which caused the First Amendment constitutional deprivations alleged, thereby establishing the *Monell* liability element of claim.

The City also argues that Lozman's complaint does not sufficiently allege the existence of an express municipal policy based on the City Council's formal "Rules of Decorum," so as to put the City on fair notice of this theory of liability, and that it would be unfair to allow expansion of the pleadings at the summary judgment stage to accommodate this alternative theory of *Monell* liability. The court is not persuaded by this notice argument, however. The Plaintiff's Second Amended Complaint does allege that the complained of conduct was taken "pursuant to a custom, policy or decision made by a governmental official with final policymaking authority" [Second Amended Complaint, ¶ 40], an allegation which subsumes the theory that the complained of conduct was the

product of an express policy promulgated by a final decision maker.

As a third alternative premise of *Monell* liability, the court also finds sufficient evidence to withstand summary judgment on the issue of widespread practice or custom of constitutional deprivations perpetrated by the city agents or employees against Lozman, from which the existence of an official municipal policy may be inferred. While the defendant contends that multiple constitutional deprivations directed toward a single individual is not sufficient to constitute a "custom and practice" evidence in the *Monell* sense, and that a § 1983 plaintiff suing a municipality must instead show a series of unrelated incidents involving different persons to show informal practice or custom, it does not cite any legal authority for this proposition. Further, there is nothing in the policy rationale underpinning *Monell* which would support such a formulation of the rule.

Under *Monell*, a policy may be inferred from circumstantial proof that a municipality displayed a deliberate indifference to the constitutional rights of an individual, either by failing to train its employees, or by a repeated failure to make any meaningful investigation into multiple complaints of constitutional violations after receiving notice. *Ricciuti v. N.Y.C. Transit Authority*, 941 F. 2d 1119, 1123 (2d Cir. 1991). Whether a municipality's failure to respond involved a string of unrelated incidents involving different people, or a string of related incidents involving the same individual – the logical inference available from such a course of "deliberate indifference" is the same, i.e. that the municipality encouraged, or at least condoned, a course of unconstitutional activity by failing to take action to deter or eliminate it. Thus, "repeated, constitutional failures with respect to one individual 'as well as a culture that permitted and condoned violations of policies' may be sufficient to withstand summary judgment on a *Monell* claim." *Mayes v. City of Hammond, Indiana*, 2006 WL 2193048 (N.D. Ind. 2006) (quoting *Woodward v. Correctional Med. Servs. of Illinois*, 368

17

F.3d 917, 929 (7th Cir. 2004)).

In this case, the basis for *Monell* liability on a custom and practice theory is not premised solely on the City's alleged extended retaliatory course of legal pressure and harassment directed toward Lozman, but rather is the combination of the multiple alleged retaliatory acts and deprivations made in an alleged attempt to eliminate Lozman from the marina community, along with evidence of a culture that permitted and condoned the constitutionally impermissible retaliatory gestures, including the City of Riviera Beach's apparent lack of any policies or protocols concerning the proper handling of alleged Sunshine Act violations and appropriate litigation conduct toward the litigants involved.

In this case, there is ample evidence from which a jury could reasonably conclude that the City was on notice of one arrest and multiple threatened arrests lacking probable cause, as well as a series of legal actions prompted by questionable animus from a constitutional standpoint, endorsed or initiated by various members of the city council, and that by failing to investigate and take any remedial action to deter the misconduct, the City encouraged or condoned the misconduct, effectively adopting it as its own.  Thus, the court finds facts which may support Plaintiff's assertion that a municipal policy based on custom and policy exists, and caused the claimed constitutional injuries.  *Estate of Novack ex rel. Turbin v. County of Wood,* 226 F.3d 525, 530 (7th Cir. 2000); *Woodward v Correctional Med. Servs. of Illinois, Inc.,* 368 F.3d 917 (7th Cir. 2004).  The court shall accordingly deny the City's motion for summary judgment on the First Amendment retaliation claims under § 1983.

## 2.   Fourth Amendment Claims

Plaintiff asserts two distinct Fourth Amendment claims against the City – one for false arrest of his person, and the other for false arrest of his floating home.

A warrantless arrest without probable cause violates the Constitution and forms the basis for a § 1983 claim.  *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).  Conversely, if an arrest is supported by probable cause, the arrestee is absolutely barred from pursuing a § 1983 false arrest claim.  *Id* at 1505-06.  A false arrest claim under § 1983 is substantially the same as a claim for false arrest under Florida law.  A plaintiff must prove three elements to sustain a claim for false arrest under Florida law:  (1) an unlawful detention and derivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances and (3) an intentional detention.  *Tracton v. City of Miami Beach*, 616 So.2d 457 (Fla. 3d DCA 1992).  Probable cause may be raised as an affirmative defense to a claim for false arrest; that is, an arrest of a criminal suspect by an officer acting with probable cause is a privileged detention.  *Id*., citing *Lee v. Geiger*, 419 So.2d 717 (Fla. 1st DCA 1982), *rev. den* 429 So.2d 5 (Fla. 1983).  Probable cause exists "if at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003).

Probable cause is evaluated from the viewpoint of a prudent, cautious police officer on the scene at the time of the arrest.  *Miami-Dade County v. Asad*, 78 So.3d 660 (Fla. 3d DCA 2012).  Hindsight may not be employed in determining whether a prior arrest was made on probable cause;

19

thus, events that occur subsequent to the arrest are irrelevant in assessing a false arrest claim. *Id.* To show probable cause, the arresting officer must have had reasonable grounds to believe that the arrestee committed a crime. The test is an objective one, i.e. a probable cause determination considers whether the objective facts available to the officer at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed. *United States v. Gonzalez*, 969 F.2d 999, 1003 (11th Cir. 1992). Because it is objective, the determination is made without regard to the individual officer's subjective motive or belief as to the existence of probable cause.

In this case, the City argues that the Plaintiff's § 1983 Fourth Amendment claim, based on the November 2006 arrest of his person, is legally insufficient because the arresting officer had probable cause to arrest Plaintiff for disorderly conduct and resisting arrest without violence.

As a threshold matter, there is a genuine issue of material fact as to whether the officer had probable cause to arrest Lozman for disorderly conduct at the time of the arrest incident in question. Florida Statutes, § 877.03, defines and proscribes "disorderly conduct" as follows:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace of disorderly conduct shall be guilty of a misdemeanor of the second degree.

The Florida Supreme Court has narrowly construed this statute, so that as applied to verbal conduct, it applies only to words which by their very utterance inflict injury or tend to incite an immediate breach of the peace. *State v. Saunders*, 339 So.2d 641 (Fla. 1976). It also applies to words known to be false, reporting some physical hazard in circumstances where such a report would create a clear and present danger of bodily harm to others. That is, the statute has been narrowly interpreted to prohibit "fighting words" or shouting "fire" in a crowded theater. *A.S.C. v. State*, 14 So.3d 1118

(Fla. 5th DCA 2009).   Notably, for purposes of the instant discussion, Florida courts have consistently held that unenhanced speech alone will not support a conviction for disorderly conduct. *Id.*

There is no suggestion in the present record that Lozman's conduct precipitating his arrest incited others to breach the peace, or posed an imminent danger to others; thus there is a large question as to whether the arrest was supported by probable cause to believe he engaged in disorderly conduct, which, under *Saunders* and its progeny, requires something more than loud or profane language, or a belligerent attitude.  *Miller v. State*, 667 So.2d 325, 328 (Fla. 1st DCA 1995).  And, if there was no probable cause for Lozman's disorderly conduct arrest, there can be no probable cause for resisting arrest without violence, because the latter crime presupposes that the arrestee was the subject of a valid detention and arrest.  This follows because every person has the right to resist, without violence, an unlawful arrest.  *Robbins v. City of Miami Beach*, 613 So.2d 580 (Fla. 3d DCA 1993), citing *K.Y.E. v. State*, 557 So.2d 956 (Fla. 1st DCA 1990) (recognizing common law rule that a person may lawfully resist illegal arrest without using force or violence). In other words, if there was no probable cause for Lozman's arrest for disorderly conduct, or some independent crime, he could not lawfully be arrested for "resisting arrest without violence," because the latter is not a "stand alone" crime.  *Lee v. State*, 368 So.2d 395 (Fla. 3d DCA 1979) (failure of state to prove that the arrest which defendant resisted was lawful made it necessary to reverse conviction for resisting arrest without violence).

Because the record, at best, reveals a genuine issue of material fact on the question of whether the police officers had objective reason to believe Lozman was engaged in "disorderly conduct" at the time of the subject arrests, there is an issue as to whether his arrests were supported

21

by probable cause, and the City is not entitled to summary judgment on the Fourth Amendment false arrest of the person claim.

 With regard to the alleged false arrest of property claim, however, the City acted with the authority of the federal admiralty court when it arrested and seized Lozman's floating home, which the court finds, as a matter of law, constitutes "probable cause" for that arrest and seizure. That it was later determined the district court lacked subject matter jurisdiction to issue the order does not detract from the probable cause that existed at the time of the arrest. It is axiomatic that hindsight should not be used to determine whether a prior arrest or search was made with probable cause. *Miami-Dade County v Asad*, 78 So.3d 660 (Fla. 3d DCA 2012). Thus, events that occur subsequent to the arrest are irrelevant in a false arrest claim because whether a false arrest was made turns on whether there was probable cause at the time of the arrest; i.e. subsequent events cannot remove the probable cause that existed at the time of the arrest. *Id.*, citing *McCoy v. State*, 565 So.2d 860 (Fla. 2d DCA 1990).

 Therefore, accepting the allegations of the Second Amended Complaint as true, and reading the record evidence in the light most favorable to Lozman,  it is clear that the City had probable cause to arrest Lozman's  floating home at the time of the arrest and seizure.  The fact that the federal district court which issued the order was later found to have lacked subject matter jurisdiction over the matter, requiring it to vacate its final judgment for the City, does not change the fundamental probable cause analysis for the Plaintiff's Fourth Amendment false arrest of property claim.  The court shall accordingly grant the City's motion for summary judgment on this prong of the Plaintiff's §1983 Fourth Amendment false arrest claim.

### 3.   Fourteenth Amendment Equal Protection Claim

To plead a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must proffer sufficient factual allegations to show that:  (1) plaintiff was treated differently from other similarly situated individuals, and (2) such differential treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.  *Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  The comparison must be to those who are "similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).  Alternatively, to show a "class of one" equal protection claim where a plaintiff asserts that he was irrationally discriminated against on an individual basis, rather than as member of a particular group, the plaintiff must show he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L.Ed. 2d 1060 (2000).  To be "similarly situated," under this rubric, the comparators must be "*prima facie* identical in all relevant respects."  *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1264 (11th Cir. 2010); *Thorne v. Chairperson Fla. Parole Comm'n*, 427 Fed Appx 765, 771 (11th Cir. 2011).

The test for determining whether other persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent. *Penlyn Development Corp. v. The Incorporated Village of Lloyd Harbor*, 51 F. Supp. 2d 255, 264 (E.D.N.Y. 1999).

Plaintiff's selective enforcement claim in this case is based on allegations that other members of the audience at city council meetings who spoke critically of the City or the integrity of its City

Council members were not similarly interrupted and forcibly removed from the podium; that other City marina residents who did not publicly advocate against the city's planned redevelopment project were not similarly targeted for eviction from the marina, through legal process and other "self-help" eviction tactics, and were not subject to similar harassment by city police and city employees (dog-walking stops, and invasive photography of Plaintiff in his home).

The City argues that the Plaintiff fails to show sufficient similarity of comparators to state an equal protection selective enforcement claim, where the alleged conduct of other audience members is not similar to that of Plaintiff, where it is not alleged that they disrupted the council meetings times by speaking off-topic, at high volume, and over the members of the council, and further, that the alleged conduct of other marina lessees is not similar to Plaintiff, where it is not alleged that they were significantly delinquent in their dockage fees, or had dogs that were aggressive toward other dogs or people.

The City also points out the video of the January 3, 2007 meeting of the City Council shows that another audience member, Christi "Pepper" Newman, was also removed from the podium right after Lozman was removed. According to the City, Pepper, like Lozman, was similarly situated in the sense her speech was critical of the City (she complained that the City was remiss for not standing up to Lozman and suing him for slander), and she was also forcibly removed from the podium. As to the eviction efforts and ultimate seizure of Lozman's floating home, the City notes that Lozman has not identified any other marina residents with floating homes or vessels who were "similarly situated" in the sense that they were in violation of marina "wet slip" agreements by way of a failure to satisfy arrearage for dockage fees.

The court concludes that the selective enforcement claim fails because the summary

judgment record does not contain sufficient evidence from which a reasonable person could infer that the Plaintiff and other council meeting audience members were similarly situated, or that Plaintiff and other marina residents and lessees were similarly situated.  Because the record does not contain sufficient factual allegation from which disparate treatment can be inferred, the court shall grant the City's motion for summary judgment on Lozman's Fourteenth Amendment Equal Protection claim.

### 4.  Fourteenth Amendment Due Process Claims

Lozman also alleges that the City violated his Substantive and Procedural Due Process rights under the Fourteenth Amendment through the conduct of its campaign to harass, retaliate and punish Lozman for his public criticism of the City and certain City officials [Second Amended Complaint, paragraph 42].  However, a § 1983 claim cannot be sustained based on the  filing of criminal charge without probable cause under the substantive due process or procedural due process  protections of the Fourteenth Amendment. *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007), citing *Albright v. Oliver*, 510 U.S. 266 (1994).  The underpinning theory is that the more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in the § 1983 context. *Id.,* citing *Albrigh*t at 273 (quoting *Graham v. Connor*, 490 U.S. 386 (1989).

Under this same rationale, the Plaintiff's substantive due process claim fails to the extent based on a First Amendment violation, because "a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable," and a "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim." *Bradenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).  The court shall accordingly grant the City's motion for summary judgment on the § 1983 claim to the extent premised on alleged Fourteenth

Amendment Substantive and Procedural Due Process violations.

### 5.  Riviera Beach Community Redevelopment Agency

The City argues that the Riviera Beach Community Redevelopment Agency (CRA) is a legal entity which is separate and distinct from the City of Rivera Beach, and that the City accordingly cannot be liable for any constitutional deprivations or tortious conduct attributed to members of the CRA.  See §163.357(1), Fla. Stat. (2013).  On this tenet, it moves for summary judgment on all claims to the extent premised on conduct of CRA members, as described in the Plaintiff's Second Amended Complaint at paragraphs 1, 15-18, 2(c),28(d), 28(g), 28(i), 48(b), and 66.

Upon consideration, the court has determined to defer its ruling on this ground of the City's motion for summary judgment.

### B.  State Law claims

### 1.  Failure to comply with conditions precedent

On the supplemental state law claims, the City argues that all of Lozman's state claims should be dismissed with prejudice for Plaintiff's failure to comply with pre-suit notice requirements of §768.28(6), Fla. Stat. (2013).  The City contends that because no pre-suit notice was given, and because the three-year statute of limitation on these claims has expired, it would be futile to give Lozman an opportunity to provide the notice now and re-plead his complaint accordingly.  Thus, the City moves for summary judgment on all state claims for failure to satisfy all conditions precedent to suit.

Lozman contends that his former attorney, Robert Bowling, sent a pre-suit notice on July 9, 2008 to City Attorney Pamela Ryan, as well as to the City's outside litigation counsel, Benjamin Bedard.  He supports this contention with an affidavit identifying a letter issued on "Cobb & Cole"

26

firm letterhead, addressed to Pamela Ryan, City Attorney for Riviera Beach, which describes certain First, Fourth Amendment and Fourteenth Amendment claims against the City based on Lozman's arrest in November 2006, and an antagonistic course of conduct that followed.  Lozman concedes that the Second Amended Complaint does not specifically allege the giving of pre-suit notice through this letter, and asks for permission to amend his complaint to do so.

The court shall grant Lozman's request to amend his complaint by interlineation to allege the giving of pre-suit notice as to the November 2006 false arrest and battery claims, which are fairly identified in Attorney Bowling's notice of claim.  However, this notice cannot be read to cover claims which accrued after that point in time, such as the alleged battery arising from the October 2009 incident or the conversion claim arising from the City's arrest and seizure of Lozman's floating home in November 2009.

Further, as to the battery claim arising out of the October 2009 incident, Lozman failed to file the requisite notice within three years of the accrual of his claim, as required by § 768.28(6), Fla. Stat. (2013).  Because this is not in the nature of a continuing tort, it would be futile to allow him an opportunity to provide the notice now as the statutory period of limitation has expired.  Accordingly, the City is entitled to a dismissal with prejudice of the state law battery claim to the extent based on the October 2009 incident, and the court will enter summary judgment in its favor accordingly.

The court reaches a different result, however, on the Plaintiff's state law conversion claim. This claim did not accrue until the point in time that the City's possession of Lozman's floating home became wrongful, which occurred when the Supreme Court ruled that Lozman's floating home did not qualify as a "vessel" and, therefore the district court had lacked subject matter jurisdiction. Under Florida law, the City's lawful possession of the floating home during the course of the

admiralty proceeding did not become wrongful simply because Lozman demanded the return of his property during the course of that proceeding.  Rather, the conversion action could accrue only after the City lost the protection of the federal district court's authority over the matter in the course of the federal *in rem* admiralty proceedings.  *Snell v. Short*, 544 F.2d 1289 (5th Cir. 1977) (conversion claim accrued after police lost protection of order of court or magistrate, not when officers refused plaintiff's demand for return of money).

Since the statute of limitations has not run on Lozman's state law conversion claim, but because he has failed to provide the City with the statutorily required pre-suit notice of claim, the court will dismiss Lozman's state law conversion claim without prejudice, and grant the City's motion for summary judgment on this claim to this limited extent.

### C. Plaintiff's Motion for Partial Summary Judgment

Conversion is act of dominion wrongfully asserted over another's property inconsistent with his or her ownership interests.  In this case, Lozman contends he is entitled to summary judgment on his common law conversion claim because the evidence shows he owned the floating residential structure at the time the City arrested and seized it; the City intentionally arrested the floating home in a "sham" federal admiralty action after Lozman prevailed in a state eviction action; the City refused his repeated demands for return of his home (based on the federal court's lack of jurisdiction over the structure) during the course of admiralty proceedings; and the City wrongfully and vindictively destroyed the floating home after purchasing it as highest bidder at a U.S. Marshal sale in Miami, making it impossible to restore the property to Lozman even after the United States Supreme Court ruled in his favor on the invalidity of the jurisdictional threshold underpinning the in rem proceeding.

The common law tort of conversion may lie even if defendant took or retained property on mistaken belief he had a right to possession.  *Seymour v. Adams,* 638 So.2d 1044 (Fla. 5th DCA 1994), i.e. a tort may lie even if the act is accomplished without specific wrongful mental intent. *City of Cars, Inc. v. Simms*, 526 So.2d 119 (Fla. 5th DCA), *rev. den*., 534 So.2d 401 (Fla. 1988). Thus, the court concludes that the initial existence of probable cause to sustain the arrest and seizure of the floating home, as determined by the federal district court in the admiralty proceeding, does not necessarily defeat a claim for common law conversion.

However, the court has concluded this claim is not ripe for adjudication for failure to give pre-suit notice of claim, as required by § 768.28(6), as discussed above, and that the claim is appropriately dismissed from this action without prejudice for the Plaintiff to reassert it after provision of proper notice and issuance of the City's denial of claim, or expiration of the statutory period within which the City is obligated to respond, whichever comes first.  Accordingly, the court shall deny Lozman's motion for partial summary judgment on the state law conversion claim.

### V. Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1.   The City's motion for summary judgment is **GRANTED IN PART and DENIED IN PART**  as follows:

    a.  The motion is **DENIED** as to the § 1983 claim based on First Amendment retaliation, and **DENIED** as to the § 1983 claim based on Fourth Amendment false arrest of the Plaintiff's person.

    b.  The motion is **GRANTED** as to the § 1983 claim based on Fourth Amendment false arrest of the Plaintiff's floating home.

c.  The motion is **GRANTED** as to the § 1983 claims based on Fourteenth Amendment Substantive and Procedural Due Process violations.

d.  The motion is **GRANTED** as to the § 1983 claim based on Fourteenth Amendment Equal Protection violations.

e.  The motion is **GRANTED**, based on sovereign immunity, as to the state common law claim of battery to the extent based on the October 2009 incident described in the complaint;

f.  The motion is **DENIED** as to the state common law claim of battery and false arrest to the extent based on the November 2006 arrest described in the complaint.

g.  The motion is **GRANTED** as to the state common law claim of conversion based on the City's arrest and seizure and destruction of Lozman's floating home, to the extent that court hereby **DISMISSES WITHOUT PREJUDICE** the conversion claim due to Plaintiff's failure to show compliance with the pre-suit notice of claim requirements of § 768.28(6).

2.   The plaintiff's motion for partial summary judgment on the common law conversion claim is **DENIED**.  .

   **DONE AND SIGNED** in Chambers at West Palm Beach, Florida this 19th day of August, 2014.

Daniel T. K. Hurley
United States District Judge

cc.  Fane Lozman, *pro se*
     All counsel